**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | | |
|---|---|---|
| CHRISTINE H.,[1] *Plaintiff*, v. FRANK BISIGNANO, Commissioner of Social Security, *Defendant*. | ) | Civil No. 3:25-cv-363 (SLS) |

**MEMORANDUM OPINION**

In this action, Plaintiff Christine H., who proceeds *pro se*, seeks review of the Commissioner of the Social Security Administration's ("SSA's") decision to deny her Title II application for disability insurance benefits. This matter comes before the Court on cross-motions for summary judgment which have been fully briefed, making this matter ripe for review. (ECF Nos. 9, 12, 16.)[2] The Court exercises jurisdiction with the consent of the parties pursuant to 28 U.S.C. § 636(c)(1) (ECF Nos. 8, 13, 15) and pursuant to 42 U.S.C. § 405(g).

Plaintiff challenges the Commissioner's decision denying her social security benefits as lacking substantial evidentiary support and as a misapplication of the law. (ECF No. 9, at 9; ECF No. 16, at 3, 14.)[3] Specifically, Plaintiff argues that the Administrative Law Judge ("ALJ") erred

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that federal courts refer to claimants by their first names and last initials in social security cases.

[2] Following the Commissioner's motion for summary judgment, the Court issued a Notice to Plaintiff advising her of her right to respond to the dispositive motion. (ECF No. 14.) This notice is required under *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975) and commonly called the Roseboro notice. *See Milla v. Brown*, 109 F.4th 222, 233 (4th Cir. 2024).

[3] For Plaintiff's filings, the Court cites to the pages as numbered by CM/ECF.

in finding no evidence of a severe impairment at step two in light of her combat-related PTSD diagnosis and her honorable hardship discharge from the United States Air Force. (ECF No. 9, at 9-11; ECF No. 16, at 6.) Plaintiff moves the Court to grant judgment in her favor, reverse the Commissioner's denial decision, and grant her benefits. (ECF No. 9, at 13; ECF No. 16, at 3.)

In response, the Commissioner contends that despite a PTSD diagnosis, there is no evidence for the ALJ to review during the relevant period (March 22, 1993 to December 31, 1998) which substantiates Plaintiff's disability claim, and thus the ALJ's decision to deny benefits is supported by substantial evidence. (ECF No. 12, at 2-3, 8-12.) The Commissioner moves the Court to affirm his final decision denying benefits. (ECF No. 12, at 1, 13.)

For the reasons set forth below, the Court finds that the ALJ complied with applicable legal standards in considering the record and that substantial evidence supports the ALJ's step two conclusion that Plaintiff failed to present medical signs or laboratory findings to substantiate the existence of a medically determinable impairment. Therefore, the Court will DENY Plaintiff's Motion for Summary Judgment (ECF No. 9), GRANT the Commissioner's Motion for Summary Judgment (ECF No. 12), and AFFIRM the final decision of the Commissioner.

## I. PROCEDURAL HISTORY

On October 26, 2023, Plaintiff filed an application for disability insurance benefits, alleging disability beginning on March 22, 1993, due to PTSD related to combat military service. (Administrative Record ("R.") at 11, 54.)[4] The Commissioner denied Plaintiff's claim initially and on reconsideration. (R. at 11, 57-58.)

[4] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. Civ. R. 5 and 7(C). In accordance with these rules, the Court will exclude personal identifiers from this Memorandum Opinion. The Court will further restrict its discussion of Plaintiff's medical information to the extent necessary to result in a proper analysis of the case.

Plaintiff sought review from an ALJ, and a hearing was held on November 25, 2024.[5] (R. at 11, 21-53.) Both before and during the hearing, the ALJ advised Plaintiff about the opportunity to obtain representation and the benefits of having such representation. (R. at 26-27, 82, 90, 94, 106.) The ALJ offered to continue the hearing to allow Plaintiff an opportunity to obtain representation. (R. at 26-27.) Plaintiff declined that opportunity, indicating she wished to move forward *pro se*. (R. at 29.)

On January 3, 2025, the ALJ issued a written decision, finding Plaintiff not disabled within the meaning of the Social Security Act ("the Act") from March 22, 1993 (the alleged onset date) to December 31, 1998 (her date last insured). (R. at 11-16.) The SSA Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (R. at 1-3.) Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual has a disability "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." *Id.* § 423(d)(2)(A).

[5] Plaintiff waived her right to a hearing before the ALJ, asking instead that the decision be made on a record review. (R. at 11, 75, 78-79.) The ALJ, however, denied this request and scheduled a telephonic hearing. (R. at 23.)

SSA regulations set forth a five-step process to determine whether an individual is disabled. 20 C.F.R. § 404.1520(a)(4); *see Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015) (describing the ALJ's five-step sequential evaluation). At step one, the ALJ reviews the claimant's current work activity to determine if he or she has been participating in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. *Id.* § 404.1520(a)(4)(ii). At step three, the ALJ determines whether the medical impairments meet or equal an impairment listed in the regulations. *Id.* § 404.1520(a)(4)(iii). Between steps three and four, the ALJ determines the claimant's residual functional capacity ("RFC"), which accounts for the most that the claimant can do despite his or her impairments. *Id.* § 404.1545(a).

At step four, the ALJ assesses whether the claimant can perform his or her past employment given his or her RFC. *Id.* § 404.1520(a)(4)(iv). The burden of proof remains with the claimant through step four of the analysis, and the claimant must prove that his or her limitations preclude the claimant from performing his or her past relevant work. *See Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987); *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). If such past work can be performed, then benefits will not be awarded, and the analysis ends. *See* 20 C.F.R. § 404.1520(f). However, if the claimant cannot perform his or her past work, the analysis proceeds to step five, and the burden then shifts to the Commissioner to show that the claimant can perform other work that is available in the national economy. *See id.* § 404.1520(a)(4)(v). The Commissioner usually offers this evidence through the testimony of a vocational expert. *See Mascio*, 780 F.3d at 635.

In reviewing a decision to deny benefits, the Court will affirm the SSA's "disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Id.* at 634 (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699

F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance of evidence and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *See Hancock*, 667 F.3d at 472; *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Dunn v. Colvin*, 607 F. App'x 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)). Thus, a decision by the Commissioner is not subject to reversal merely because substantial evidence would have supported a different conclusion. *Id.*

To determine whether substantial evidence exists, the Court must examine the record as a whole, but may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (second alteration in original)); *see Craig*, 76 F.3d. at 589. The Court must consider the support for the Commissioner's decision and "whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). If a fact is supported by substantial evidence, the Court must affirm, regardless of whether the Court agrees with such findings. *Hancock*, 667 F.3d at 476 (citing *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996)). If the Commissioner's findings are arbitrary or unjustified, then they are not supported by substantial evidence, and the Court must reverse the decision. *See Breeden*, 493 F.2d at 1007.

Pleadings filed by *pro se* litigants should be afforded a liberal construction. *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006). The Court, however, need not attempt "to discern the unexpressed intent of the plaintiff." *Id*. As the Fourth Circuit articulated in *Beaudett v. City of Hampton*, "[p]rinciples requiring generous construction of *pro se* complaints are not . . . without

limits." 775 F.2d 1274, 1278 (4th Cir. 1985). "Though [*pro se*] litigants cannot, of course, be expected to frame legal issues with the clarity and precision ideally evident in the work of those trained in law, neither can district courts be required to conjure up and decide issues never fairly presented to them." *Id*. at 1276.

## III. THE ALJ'S DECISION

The ALJ found that Plaintiff last met the insured status requirements of the Act on December 31, 1998. (R. at 13.) Then, the ALJ analyzed Plaintiff's disability claim under the five-step evaluation process. (R. at 12-16); *see* 20 C.F.R. § 404.1520(a)(4); *Mascio*, 780 F.3d at 634-35. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity from her alleged onset date of March 22, 1993 through her date last insured of December 31, 1998. (R. at 13.)

At step two, the ALJ found that the record contained no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment through the date last insured. (R. at 14.) The ALJ explained that, at step two, Plaintiff must show evidence of a severe impairment existing prior to December 31, 1998—her date last insured. (R. at 14.) The ALJ then summarized the record. (R. at 14-15.)

Regarding Plaintiff's subjective reports, Plaintiff last worked in 1993, when she was honorably discharged from the United States Air Force. (R. at 14.) Plaintiff alleges an inability to work since 1993 due to combat-related PTSD and related symptoms. (R. at 14.) Plaintiff did not apply for benefits with the Department of Veteran's Affairs ("VA") until 2021, when she became aware of her potential eligibility. (R. at 14.) Plaintiff testified that she never leaves her house without her husband, never drives a car, and never engages in social interaction with anyone but her husband. (R. at 14.) Plaintiff has difficulty focusing and concentrating and relies on her

husband to handle most household chores, maintenance, and meal preparation. (R. at 14.) Plaintiff testified that she has not received treatment outside the VA medical system since her honorable discharge in 1993. (R. at 14.)

The ALJ then examined the available records, which are reports prepared by the VA. (R. at 14; *see also* R. at 183-216.) The VA found Plaintiff 100% disabled due to her military service effective September 9, 2021. (R. at 14.) A report from the VA evaluation referenced a suicide attempt in 2016, but no mental health treatment or psychiatric hospitalization during her military service or since her honorable discharge. (R. at 14.) Plaintiff recounted how her career in the military involved exposure to the remains of those killed in military service and how she experienced recurrent symptoms linked to those traumatic experiences. (R. at 15.) The only other records available are also dated many years subsequent to Plaintiff's date last insured and relate to Plaintiff's application to provide personal care services to her husband. (R. at 15.)

After summarizing the record, the ALJ found no evidence of a medically diagnosed impairment of any kind prior to 2021. (R. at 15.) In the absence of "medical signs or laboratory findings to substantiate the existence of a medically determinable impairment through the date last insured," the ALJ found Plaintiff not disabled from March 22, 1993 through December 31, 1998. (R. at 15 (citing 20 C.F.R. § 404.1520(c)).)

## IV. ANALYSIS

In challenging the ALJ's decision, Plaintiff argues that Dr. Carol S. McCleary's medical opinion from 2023—that Plaintiff suffered from "severe war-time combat PTSD emerging between Aug 1990 to Mar 1993"—provides substantial support for a disability finding. (ECF No. 9, at 10-11; ECF No. 16, at 2, 5-8.) She further highlights her DD214 as substantial evidence that corroborates Dr. McCleary's combat-related PTSD diagnosis. (ECF No. 9, at 6-7; ECF No. 16, at

5-8.) The ALJ, however, considered this information, but found insufficient evidence in the record to establish a medically determinable impairment on or before December 31, 1998. (R. at 14-15.) Because the ALJ's conclusion that Plaintiff had no severe impairment comports with applicable legal standards and is supported by substantial evidence, the Court finds no error.

The Act makes clear that the burden of proving a disability lies with the Plaintiff. 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless [s]he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."). Objective medical evidence—not Plaintiff's subjective complaints, alone—must exist to prove a medical impairment. *Id.* ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph… would lead to a conclusion that the individual is under a disability.").

The regulations similarly note that Plaintiff bears the burden of proving her disability and that such disability must be found by objective medical evidence. 20 C.F.R. § 404.1512(a) (stating that the claimant bears the burden of proving disability); 20 C.F.R. § 404.1521 ("Your impairment(s) must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. Therefore, a physical or mental impairment must be established by objective medical evidence from an

acceptable medical source. We will not use your statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s).").

With citation to both the relevant regulations and Social Security Rulings, the ALJ correctly explained, "regardless of how many symptoms an individual alleges, or how genuine the individual's complaints may appear to be, the existence of a medically determinable physical or mental impairment cannot be established in the absence of objective medical abnormalities; i.e., medical signs and laboratory findings." (R. at 14 (citing 20 C.F.R. §§ 404.1521, 404.1529; SSR 16-3p).) The ALJ then concluded that the record contained no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment through the date last insured. (R. at 15.) Given the absence of treatment records during the alleged disability period and considering the limited evidence available in the record, substantial evidence supports the ALJ's conclusion.

In arguing otherwise, Plaintiff relies on the medical opinion of Dr. McCleary, which found that Plaintiff suffered from combat-related PTSD, and her DD214, which documents an early hardship discharge. (ECF No. 9, at 8; *see also* ECF No. 16, at 2 ("The Court should find that my diagnosis of time-tethered combat PTSD and my DD214 are the linchpin documents here—together, they very nicely fulfill all legal and regulatory requirements for DIB.").)[6] Plaintiff argues that "war-time combat-derived PTSD is inherently and inextricably time tethered to the combat that caused the war combat PTSD." (ECF No. 9, at 8.) In other words, Plaintiff asserts that her PTSD disability had to have "occurred during the period of military combat when [she] was SSA-insured . . . ." (ECF No. 9, at 9.) The Act and implementing regulations, however, require more

[6] Plaintiff confirms that she does not rely on the VA's disability finding, her testimony, or her husband's testimony to establish the existence of a severe impairment at step two. (ECF No. 16, at 2, 11.)

to establish the existence of a severe impairment. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1521, 404.1529; SSR 16-3p, 82 Fed. Reg. 49463 (Oct. 25, 2017). Plaintiff presented no objective medical evidence during the relevant period from March 22, 1993 through December 31, 1998 and confirmed that no additional treatment records existed. (R. at 14-15.) A diagnosis in a medical opinion, such as Dr. McCleary's, is insufficient to establish the existence of a medically determinable impairment.[7] *See, e.g.*, *Felton-Miller v. Astrue*, 459 F. App'x 226, 229-30 (4th Cir. 2011) (stating that "[m]edical conditions alone do not entitle a claimant to disability benefits; there must be a showing of related functional loss"); *see also Huntley v. Kijakazi*, No. 1:20cv862, 2021 WL 5834406, at *4-6 (M.D.N.C. Dec. 9, 2021) (stating that a diagnosis from a medical source is not enough to establish a medically determinable impairment at step two). Moreover, while Plaintiff argues that her DD214 proves her inability to work (*see* ECF No. 16, at 3), she must first establish a severe impairment at step two before proceeding through the sequential evaluation process, wherein the ALJ would determine Plaintiff's ability to work at later steps. *See* 20 C.F.R. § 404.1520(a)(4).

Plaintiff questions whether the ALJ recognized that combat-related PTSD is time-tethered to combat service. (ECF No. 16, at 13.) The record reflects that the ALJ was sympathetic to Plaintiff. For example, he stated:

> I have no doubt that you have PTSD. It's been diagnosed. You know, you've served and served in an area where, you know, it's sadly a common condition that many of those performing that type of duty ended up with. The big area I have to

---

[7] "A medical opinion is a statement from a medical source about what [a claimant] can still do despite [his or her] impairment(s) and whether [the claimant] ha[s] one or more impairment-related limitations or restrictions . . . ." 20 C.F.R. § 404.1513(a)(2). Dr. McCleary's opinion appears in an "Initial Post Traumatic Stress Disorder (PTSD) Disability Benefits Questionnaire," completed as part of Plaintiff's claim for disability benefits through the VA. (R. at 190-99.) The questionnaire itself asks for a "medical opinion." (R. at 193.) Regardless, to the extent the questionnaire references clinical findings, these stem from a 2023 examination and do not prove the existence of a medically determinable impairment from 1993 to 1998. (*See* R. at 190-99.)

> look at is, one, of course whether or not you were disabled before December 31, 1998, which is your date last insured . . . .

(R. at 32-33.) He took multiple steps to ensure that Plaintiff had the opportunity to provide all available records pertaining to the issue of disability. (*See* R. at 25, 30-32.) The ultimate reason that the ALJ found Plaintiff not disabled at step two was the absence of medical signs or laboratory findings to substantiate the existence of a medically determinable impairment from 1993 to 1998. (R. at 14-15.) Given the absence of any medical records or treatment history from the relevant period and the applicable law defining medical impairment, the ALJ did not err in reaching that conclusion.

## V. CONCLUSION

For the reasons set forth above, the Court will DENY Plaintiff's Motion for Summary Judgment (ECF No. 9), GRANT the Commissioner's Motion for Summary Judgment (ECF No. 12), and AFFIRM the final decision of the Commissioner. An appropriate Order will accompany this Memorandum Opinion.

/s/

Summer L. Speight
United States Magistrate Judge

Richmond, Virginia
Date: September 29, 2026